UNITED STATES BANKRUPTCY COURT          <u>FOR PUBLICATION</u>
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
IN RE:
                                                              Chapter 7
GEORGE J. ABBALE,
                                                              Case No.: 11-74204-dte
                              Debtor.
-------------------------------------------------------------X
RICHARD HALLER and CAROL MCCALL,

                              Plaintiffs,
                                                              Adv. Pro. No.: 11-9490-dte
            -against -

GEORGE J. ABBALE, NORTHPORT
CENTER ASSOCIATES, LLC, and ALLAN
B. MENDELSOHN,

                              Defendants.
-------------------------------------------------------------X

## MEMORANDUM DECISION

*Appearances:*

Russo Law Offices
*Attorneys for Plaintiffs*
By: Benjamin D. Russo, Esq.
73 Benson Avenue
Sayville, NY 11782

The Law Offices of Avrum J. Rosen, PLLC
*Attorneys for Defendant Allan B. Mendelsohn*
By: Fred S. Kantrow, Esq.
38 New Street
Huntington, NY 11743

Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Plaintiffs Richard Haller and Carol McCall commenced this adversary proceeding seeking a determination of (1) the extent of their interest in certain shares in Northport Center Associates, LLC held by the chapter 7 Trustee (the "Trustee") on behalf of the bankruptcy estate of George J. Abbale, the Debtor, and (2) the Plaintiffs' entitlement to continued income from such shares even after the Trustee has sold those shares pursuant to 11 U.S.C. § 363. This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper pursuant to 28 U.S.C. § 1409. This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O) and 11 U.S.C. § 541 and New York Limited Liability Company Law § 603. The following constitutes the Court's findings of fact and conclusions of law as mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FACTS

Northport Center Associates, LLC is a New York limited liability company and the owner of real property located at 404 Fort Salonga Road, Northport, New York (the "Real Property") that generates rental income from commercial leases of the Real Property. Prior to August 2006, Debtor owned three units of Northport Center Associates, a partnership. Northport Center Associates converted from a partnership to a limited liability company in August of 2006 (hereafter "NCA").

In or around July 2006, Debtor had discussions with Richard Haller regarding a potential investment concerning NCA units or shares. Richard Haller gave the Debtor $135,000 with respect to the investment. Carol McCall, Haller's business and life partner, also gave the Debtor $135,000 by check dated July 27, 2006 with respect to the investment. At the time the Debtor received the $270,000 from the Plaintiffs, Debtor did not provide any written documentation

1

reflecting his receipt of the funds or the purpose or intended use of the funds. According to Haller, "a handshake and a look in the eye" were sufficient at the time for the parties to come to an agreement as to the investment. Apparently, the Debtor and Haller were friends and had a history whereby Haller extended personal loans to the Debtor aggregating $325,000 based upon "a handshake and a look in the eye" without receiving any contemporaneously written note in return.

In August of 2006, the Debtor purchased an additional 6.75 units or shares in NCA of which three of the shares were purchased using the funds provided by the Plaintiffs. After the purchase, the Debtor became the holder of record of a total of 9.75 shares which represented a 46.43% interest in NCA. Each share represents a 4.761% interest in NCA. The Debtor did not transfer ownership of the three NCA shares purchased with Plaintiffs' funds to the Plaintiffs. The Debtor had no intention of relinquishing control of the NCA shares, including any managerial and voting powers associated with the NCA shares. The Debtor did give each of the Plaintiffs an interest in the net income stream that the Debtor received from some of the NCA shares he held. In addition, he intended to give the Plaintiffs any future increase in the value of NCA.

Pursuant to NCA's Operating Agreement effective as of August 25, 2006 (the "Company Agreement"), transfers, in whole or in part, of the right to receive allocations of profits and losses, distributions and returns of capital and distribution of assets upon a dissolution of the company ("Economic Interest") will be recognized by NCA only if:

> (a) the transferor shall have: (i) assumed all costs incurred by [NCA] in connection with the transfer, (ii) furnished [NCA] with a written opinion of counsel, satisfactory in form and substance to counsel for [NCA], that such transfer complies with applicable federal and state securities law and the Company Agreement and will not result in [NCA] being treated as a publicly traded partnership for purposes of section 7704 of the [Internal Revenue] Code

and (iii) complied with such other conditions as the Management Member may reasonably require from time to time; and

(b) The transferee shall have assumed the obligations, if any, of the transferor to [NCA], including of the obligation to fulfill the pro rata portion of the transferor's then existing or subsequently arising Commitment related to the transferred Economic Interest or portion thereof.

§ 11.2 of the Company Agreement.

The Plaintiffs did not furnish NCA with a written opinion of counsel that the Debtor's transfer of an economic interest in three of the NCA shares held by him complied with applicable federal and state securities law and that the transfer will not be treated as a publicly traded partnership for federal income tax purposes, nor did the Plaintiffs assume the obligations of the Debtor to fulfill the pro rata portion of the Debtor's then existing or subsequently arising Commitment relating to the transferred economic interest in the three NCA shares. Accordingly, Plaintiffs' economic interest in three of the NCA shares held by the Debtor was not recognized by NCA.

NCA has no record of the Plaintiffs' interest in the NCA shares and physical share certificates were not issued to the Plaintiffs. Whenever NCA made payments of net rental income it received from the Real Property to its members, NCA would make the payments to the Debtor or to Abbale Management, LLC and not to the Plaintiffs. The Debtor would then include the income he received from NCA in his personal tax returns.

Abbale Management LLC, a real estate management company wholly owned by the Debtor, would then give the Plaintiffs their proportionate share of the net rental income from the Real Property that the Debtor had received as a member of NCA. The Debtor would also deduct the payments made to the Plaintiffs from his tax returns. Abbale Management, LLC issued IRS

Form 1099s to each of the Plaintiffs for the 2007 to 2011 tax years with respect to their share of the net rental income that the Debtor passed on to them with respect to the NCA shares. These IRS Form 1099s did not always correctly reflect the actual payments received by the Plaintiffs. Plaintiffs reported the income they received from Abbale Management LLC on their tax returns as they deemed appropriate. Plaintiffs never questioned why the IRS Forms 1099 were issued by Abbale Management, LLC rather than NCA.

In late 2008 or 2009, Haller was seeking to refinance a mortgage and needed to provide proof of his sources of income. Haller requested the Debtor to provide him with written documentation of his interest in the NCA shares. In September of 2009, the Debtor provided each of the Plaintiffs with a letter dated July 27, 2006 from Abbale Management, LLC (the "Abbale Management Letters"). The Abbale Management Letters state that: 1) NCA is the owner of the Real Property; (2) Abbale Management, LLC is the owner of 46.4282 per cent of NCA which was equal to 9.75 shares; and (3) that each of the Plaintiffs individually "invested $135,000 in Abbale Management, LLC for a limited interest in the shares owned by Abbale Management, LLC. This interest is equal to 1.5 Shares in the Real Property known as 404 Fort Salonga Road, Northport, New York."

Subsequently, the Debtor became aware that his ownership of the 9.75 shares in NCA were held in his name individually and not through Abbale Management, LLC. The Debtor then amended the Abbale Management Letters to reflect his own personal letterhead; that he was the owner of 46.4282 per cent of NCA; and that each of the Plaintiffs invested $135,000 in "George J. Abbale for a limited interest in the shares owned by George J. Abbale" (the "George J. Abbale Letters"). Neither Plaintiff questioned why the Abbale Management Letters and the George J.

4

Abbale Letters (the "Letters") state that the Plaintiffs invested their funds in Abbale Management or the Debtor, individually, rather than in NCA and why the shares relating to NCA were owned by either Abbale Management, LLC or the Debtor and not the Plaintiffs directly.

At some point after receipt of the Letters and prior to the petition date, Haller requested the issuance of NCA shares in his name. As NCA did not have any evidence that the Plaintiffs were members of NCA, NCA never issued any share certificates in the Plaintiffs' names.

The Debtor filed for chapter 7 bankruptcy relief on June 13, 2011 (the "Petition Date"). In Debtor's Schedules B and C to the petition, the Debtor disclosed under penalties of perjury that he only had a 26 per cent interest in NCA. Debtor lists Haller as a general unsecured creditor in his bankruptcy schedules as having a claim relating to 14.28 per cent of NCA and a personal note with respect to the $325,000 the Debtor borrowed from Haller in 2005. Haller filed a proof of claim only with respect to a judgment he received with respect to the $325,000 he loaned to the Debtor. Carol McCall is not listed as a creditor in the Debtor's bankruptcy schedules.

On November 10, 2011, the Plaintiffs commenced this adversary proceeding against the Debtor, NCA and the Trustee seeking a declaratory judgment that three of the NCA shares held by Trustee are not property of the Debtor's bankruptcy estate and that they were entitled to continued payment of net rental income generated by NCA with respect to the shares. Plaintiffs alleged that they are owners of three NCA shares based upon New York Limited Liability Law § 603 and that those shares are not property of the Debtor's bankruptcy estate and should be turned over to them. Because the NCA shares were held by the Trustee on behalf of the bankruptcy estate, neither the debtor nor NCA are real parties in interest in this adversary proceeding even though they are named defendants.

The Trustee argued that Plaintiffs did not have title to the NCA shares and the shares belong to the Debtor notwithstanding the Debtor's bankruptcy schedules listing the Debtor as the owner of only 26 per cent of NCA. Therefore, all the NCA shares became part of the Debtor's bankruptcy estate on the Petition Date. In addition, the Trustee contended that the fact that Plaintiffs thought that they bought actual NCA shares while the Debtor intended that the Plaintiffs only receive an interest in the income stream and the upside with respect to the NCA shares showed that there was no binding arrangement between the parties because there were no meeting of the minds. Thus, the Trustee argued that at most the Plaintiffs only had an interest in the right to payments the Debtor made with respect to the NCA shares prior to the Petition Date and that the Plaintiffs' rights to those payments terminated upon the Debtor's bankruptcy filing.

In connection with the 9.75 NCA shares held by the Trustee on behalf of the bankruptcy estate, the Trustee moved to sell those shares to Richard Lewisy, LLC, free and clear of any and all liens, encumbrances, claims and interests pursuant to 11 U.S.C. § 363(f) with any such liens, encumbrances, claims and interest to attach to proceeds of sale, and subject to higher and better offers. While the Plaintiffs objected to the proposed sale of the NCA shares pending the outcome of this adversary proceeding, they were unable to post a bond to stay the sale. The proposed sale was advertised in the local papers and a hearing on the proposed sale was conducted by the Court on June 12, 2012. On June 26, 2012, the Court entered an Order granting the Trustee's motion to sell the 9.75 NCA shares to Richard Lewisy, LLC, free and clear of all liens, encumbrances, claims and interests. Any interest the Plaintiffs have in three of the NCA shares sold by the Trustee shall attach to the proceeds of sale of those NCA shares.

## **DISCUSSION**

Upon commencement of a bankruptcy case, a bankruptcy estate is created comprising of all legal or equitable interests of the debtor in property, subject to certain exceptions, as of the petition date. 11 U.S.C. § 541(a). As of the Petition Date, the Debtor had legal title to 9.75 shares in NCA as the shares were in his name. The Plaintiffs did not hold any physical share certificate in NCA nor were they members of record of NCA.

Notwithstanding the absence of a written agreement, under New York law, "a contract may be implied where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct." *Matter of Boice*, 226 A.D.2d 908, 910, 649 N.Y.S.2d 681 (N.Y. App. Div. 1996).  See also *Bear Stearns Investment Products, Inc. v. Hitachi Automotive Products (USA), Inc.,* 401 B.R. 598, 615 (S.D.N.Y. 2009).  Performance in accordance with the implied contract is strong circumstantial evidence that there were a meeting of the minds on the essential elements of the agreement. *Viacom Int'l Inc. v. Tandem Productions, Inc.*, 368 F. Supp. 1264 (S.D.N.Y. 1974). It has been held that "partial performance is an unmistakable signal that one party believes there is a contract, and the party who accepts performance signals, by that act, that it is also understands a contract to be in effect." *Michael Coppel Promotions Pty. Ltd. v.* Bolton, 982 F. Supp. 950, 954 (S.D.N.Y. 997)(quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75 (2d Cir. 1984).

In this instance, the Plaintiffs provided funds to the Debtor in exchange for an interest in the NCA shares. While there may be some confusion on the part of the Plaintiffs as to the exact nature of their interest in the NCA shares, both parties did agree that the Plaintiffs were entitled to whatever income, profits and losses the Debtor received with respect to three of the NCA

shares held by him. Indeed, the Debtor's conduct after receiving the funds shows that he intended to be bound by such oral arrangement. For approximately 5 years, the Debtor passed on the Plaintiffs' proportionate share of the net rental income derived from the NCA shares that he purchased with their funds and he had IRS Form 1099s issued to the Plaintiffs. The Plaintiffs accepted the income received from the Debtor and reported the income on their tax returns. The Letters given to the Plaintiffs years after the agreement between Haller and the Debtor was reached only memorialized the parties' understanding of the then existing arrangement between them. At the time the Plaintiffs received the Letters, they did not dispute the assertions that the Debtor or Abbale Management was the owner of the NCA shares, or that the Plaintiffs' investment was in either Abbale Management LLC or the Debtor. Both parties conducted themselves and performed their obligations as if there was a written contract for several years. Therefore, there was an implied contract between the Plaintiffs and the Debtor that the Plaintiffs would receive the net income stream and profits and losses with respect to three of the NCA shares.

The Plaintiffs' arrangement with the Debtor constituted an assignment of the Debtor's economic interest in three of the NCA shares held by the Debtor rather than a full membership interest in NCA. Pursuant to New York Limited Liability Company Law § 603, a member of a limited liability company may assign an economic interest in such member's interest in the company.  Section 603 sets forth the following:

> (a) Except as provided in the operating agreement,
>    (1)    a membership interest is assignable in whole or in part;
>    (2)    an assignment of a membership interest does not dissolve a
>           limited liability company or entitle the assignee to
>           participate in the management and affairs of the limited

> > liability company or to become or to exercise any rights or powers of a member;
> >
> > (3)    the only effect of an assignment of a membership interest is to entitle the assignee to receive, to the extent assigned, the distributions and allocations of profits and losses to which the assignor would be entitled; and
> >
> > (4)    the member ceases to be a member and to have the power to exercise any rights or powers of a member upon assignment of all of his or her membership interest....

N.Y. Ltd. Liab. Co. Law § 603 (2012).

"Unless otherwise provided in the operating agreement, an assignment of a membership interest does not dissolve an LLC or entitle the assignee to participate in the management of the LLC or to become or exercise any rights or powers of a member. Instead, the assignee obtains only the right to receive the same distributions and the same allocations of profits and losses as the assignor. In other words, under the default provisions of the [Limited Liability Company] Act, the assignee obtains only the economic rights of the assignor to the extent assigned."  1

N.Y. Practice Series, New York Limited Liability Companies and Partnerships §7.7 (2012).

In this instance, Debtor gave the Plaintiffs only an economic interest in the three NCA shares he purchased with the Plaintiffs' funds. The Debtor would distribute a proportionate percentage of the net income stream he received from NCA as a member to the Plaintiffs that equaled three NCA shares. There was no intention by the Debtor nor any evidence that the Debtor gave up his right to participate in the management and affairs of NCA or any of his rights or powers as a member of NCA with respect to those shares. Plaintiffs never participated in the management of NCA or held any rights or powers as members of NCA. While the Plaintiffs may have thought at some point in 2009 or 2010 that they should have been issued share certificates reflecting their economic interest with respect to three of the NCA shares held by the Debtor,

they do not claim to be members of NCA nor have they undertaken the obligations needed to

become members of NCA pursuant to NCA's Company Agreement. Plaintiffs and the Debtor

never complied with the requirements of NCA's Company Agreement relating to transfers of an

economic interest in NCA shares. Accordingly, under NCA's Company Agreement, NCA need

not recognize the arrangement between the Debtor and the Plaintiffs. Indeed, the informal

assignment of the Debtor's economic interest in three of the NCA shares existed only between

the Debtor and the Plaintiffs and did not invoke any obligation on the part of NCA to issues

share certificates to the Plaintiffs or to make payments to the Plaintiffs directly with respect to

their arrangement with the Debtor.

Accordingly, even though the Plaintiffs did not have physical title to three of the NCA

shares, on the Petition Date three of the NCA shares held by the Trustee were subject to the

Plaintiffs' economic interest in those shares with each of the Plaintiffs having an economic

interest in 1.5 of the NCA shares.

However, as holders of only an economic interest in three of the Debtor's NCA shares,

the Plaintiffs would be entitled only "to receive, to the assigned, the distributions and allocations

of profits and losses <u>to which the assignor would be entitled</u>." N.Y. Ltd. Liab. Co. Law

§ 603(a)(3) (emphasis added). Plaintiffs obtained only the right to receive the same distributions

and the same allocations of profits and losses as the Debtor with respect to the three NCA shares.

The Court is unaware of whether there are any unpaid funds due from NCA to the Debtor

prepetition. To the extent there are distributions of net income with respect to the NCA shares

due to the Debtor and/or the bankruptcy estate that have not been paid during the period that the

Debtor and/or the Trustee held the NCA shares, those distributions from NCA would be subject

to the Plaintiffs' economic interest and they would be entitled to a proportionate share of those distributions with respect to three of the NCA shares.  These unpaid distributions, if any, would not be property of the bankruptcy estate.

Moreover, if the Debtor received any distributions of net income from NCA prepetition with respect to the three NCA shares that were subject to the Plaintiffs' economic interest that he did not pass onto the Plaintiffs, then the Plaintiffs would have a general unsecured claim against the Debtor's bankruptcy estate for such funds. The deadline to file proofs of claim in this bankruptcy case was October 6, 2011. However, the Plaintiffs will be given 30 days to file a claim for any unpaid funds with respect to their economic interest in three NCA shares that the Debtor received from NCA but did not turn over to the Plaintiffs or for funds that NCA had declared due but were not paid to the Debtor during the period that the Debtor and/or the bankruptcy estate held the NCA shares.

However, the Plaintiffs are not entitled to any further distribution of net income from NCA after the Trustee's sale of the 9.75 shares of NCA. The NCA shares sold to Richard Lewisy, LLC were not subject to the Plaintiffs' economic interests in the three NCA shares but were sold free and clear of any and all liens, encumbrances, claims and interests pursuant to 11 U.S.C. § 363(f).

Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if

    (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2)    such entity consents;

    (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of al liens on such property;

    (4)    such property is in a bona fide dispute; or

> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). The provisions of section 363(f) are mutually exclusive. While the Plaintiffs had an economic interest in three of the NCA shares and did not consent to the sale of the shares free and clear of their interests, there was a bona fide dispute regarding the NCA shares and Plaintiffs could be compelled to accept a money satisfaction of such interest. Accordingly, the Trustee was able to sell the NCA shares free and clear of the Plaintiffs' economic interest.

Once the Debtor's title and rights with respect to the NCA shares were terminated as a result of the sale of the NCA shares pursuant to 11 U.S.C. § 363(f), the Debtor was no longer a member of NCA and he and his bankruptcy estate were no longer entitled to receive any distributions, profits or losses from NCA. As set forth in N.Y. Ltd. Liab. Co. Law § 603, Plaintiffs' are entitled to receive distributions only to the extent to which the Debtor would be entitled to such distributions. Because the Plaintiffs' economic interest in distributions from NCA are derived from the Debtor's ownership of the NCA shares and entitlement to distributions, the Plaintiffs' economic interest in future distributions from NCA also terminated pursuant to section 363(f). Plaintiffs' economic interest attached only to their proportionate share of the proceeds of sale of the NCA shares held by the Trustee.

As the Debtor's assignment of his economic interest in three of the NCA shares to the Plaintiffs included an assignment of profits or loss with respect to those NCA shares as set forth in N.Y. Ltd. Liab. Law Co. § 603, the Plaintiffs are entitled to their proportionate share of the sale proceeds which represents their economic interest with respect to three of the NCA shares sold.

## <u>CONCLUSION</u>

Based upon the foregoing, the Plaintiffs had only an economic interest pursuant to N.Y. Ltd. Liab. Law § 603 with respect to three of the NCA shares held by the Trustee on behalf of the Debtor's bankruptcy estate. Any unpaid distributions with respect to the NCA shares that were subject to the Plaintiffs' economic interest during the period the Debtor and/or the Trustee held the shares are not property of the Debtor's bankruptcy estate. To the extent the Debtor received net distributions from NCA prepetition with respect to the three NCA shares that were subject to the Plaintiffs' economic interest that were not paid to the Plaintiffs, the Plaintiffs are entitled to a general unsecured claim with respect to such unpaid net distributions. Plaintiffs are directed to file a proof of claim for any unpaid distributions, if any, with respect to their economic interest in the NCA shares within 30 days hereof. Furthermore, the Plaintiffs are not entitled to any further distributions with respect to the NCA shares after such shares are sold pursuant to 11 U.S.C. § 363(f). Rather, the Plaintiffs' economic interest in three of the NCA shares attached to the proceeds from the sale of the NCA shares and they are entitled to their proportionate share of the sale proceeds.



**Dated: Central Islip, New York**
     **July 23, 2012**

_Dorothy Eisenberg_
**Dorothy Eisenberg**
**United States Bankruptcy Judge**

13